UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JAMES ERNEST MENDENHALL, | ) | C/A No. 4:14-184-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| SGT. CHRISTOPHER DILLARD, WARDEN TIM | ) | |
| RILEY; A/W GARY LANCE; A/W LAURA | ) | |
| CALDWELL; MAJOR JAMES PARRISH, CAPTAIN | ) | |
| JONTHAN NANCE; CAPTAIN DUNCAN; LT. | ) | |
| ROGERS; AND LT. LINDSEY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

# I.  PROCEDURAL BACKGROUND

The Plaintiff, James Ernest Mendenhall, filed this action under 42 U.S.C. § 1983[1] on January

23, 2014, alleging violations of his constitutional rights. Plaintiff is housed at Tyger River

Correctional Institution ("TRCI"). Defendants filed a motion for summary judgment on January 5,

2015, along with a memorandum, exhibits, and affidavits supporting the motion. (Doc. # 57).

Because the Plaintiff is proceeding pro se, he was advised on or about January 6, 2015, pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants'

motion for summary judgment could result in the dismissal of his complaint.  (Doc. # 58).  The

Plaintiff filed a response on January 29, 2015.  (Doc. #61).

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this
is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II.  STANDARD FOR SUMMARY JUDGMENT

As previously stated, the Defendants filed a motion for summary judgment.  A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See* <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner,</u> 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986). The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In *Celotex*, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to

which he has the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-323.


## III.  DISCUSSION

Plaintiff alleges that his federal constitutional rights were violated when Sergeant Christopher Dillard (Sgt. Dillard) struck him with a sally port door in between the A and B wings of Dorm 5 at TRCI on April 24, 2013. Plaintiff contends that Sgt. Dillard pushed a door closed striking him in the face resulting in a bloody lip and dizziness. Plaintiff alleges that Sgt. Dillard and Lt. Rogers harassed him after the event. Plaintiff asserts that Major Parrish attempted to encourage him to drop his grievance concerning the incident with Sgt. Dillard and that the Defendants failed to take action. Plaintiff seeks monetary damages and for the SCDC to "own up to their mistakes on their bad judgment on giving Sgt. Dillard the position and title to be able to wrongfully assalt[sic] and not follow his job instructions." (Complaint)

Defendants filed a motion for summary judgment along with a memorandum, an affidavit, and a copy of Plaintiff's medical record for April 24, 2013.  Sgt. Dillard attests that he is an employee of the SCDC assigned to TRCI and was so employed on April 24, 2013. (Dillard's affidavit, Doc. #57-2). Sgt. Dillard was working in Unit 5 at TRCI on April 24, 2013, and was waiting on Lt. Derrick Lindsay to call Dorm 5 for movement to the yard around "1315 hours." (<u>Id</u>.). Plaintiff, as well as several inmates, became "agitated" that they had not yet been moved to the yard. (<u>Id</u>.). Sgt. Dillard entered the sally port between wings A and B of Dorm 5 to discuss the movement situation with Lt. Lindsay. (<u>Id</u>.). The doors between the wing and the sally port are security doors with electronic locks. (<u>Id</u>.). The wing door Sgt. Dillard used had a short and would occasionally not lock when closed. (<u>Id</u>.). Sgt. Dillard attests that after entering the sally port to speak with Lt.

Lindsay, the security door did not lock so he attempted to close the door by pushing it closed. While closing the door, Sgt. Dillard became aware that Plaintiff was trying to force his way though the door to enter the sally port. Sgt. Dillard instructed Plaintiff to return to the wing and stopped closing the door. Inmates are not allowed in the sally port area except during movement as it is a secured area. Sgt. Dillard attests that his actions in closing the door were done "with no ill will towards Plaintiff and were done to maintain the security of the facility." (Id.). Sgt. Dillard did not engage in any retaliatory acts against Plaintiff. (Id.).

Defendants submitted the SCDC Health Service notes for Plaintiff dated April 24, 2013. (Doc. # 57-3). The note reveals that Plaintiff was brought to medical by Lt. Lindsey where Plaintiff stated "that he was hit in the face when door was opened on accident. Inmate states he is fine but would like to be checked out. . . .No injuries noted on inside of mouth or outside of face. No treatment needed." (Id.).

Plaintiff filed a response to the motion for summary judgment asserting that summary judgment should be denied as the officer's conduct was outside of policy which makes him liable. (Doc. #61). Further, Plaintiff asserts that the other Defendants are "liable as to the conduct that they displayed as supervisors of Sgt. Dillard" (Id.).

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 599 U.S. 34, 37 (2010). The Eighth Amendment analysis requires inquiry at to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective

component)." Williams, supra.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. (Id.) (internal quotation marks omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidence." Wilkins v. Gaddy, supra, (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. at 322. In Whitley, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321 (1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. 1175, 1178. See also Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).[2]

_____

[2] While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins , 130 S.Ct. at 1178. Instead, the extent of injury suffered is

Here, the Plaintiff's allegations do not support a claim of excessive force. It is undisputed that Plaintiff was struck with the door as Sgt. Dillard was closing it. However, there is no evidence that Sgt. Dillard shut the door striking Plaintiff "maliciously and sadistically for the very purpose of causing harm." Additionally, the medical records note that Plaintiff indicated that it was an accident, no injury occurred, and no treatment needed. Plaintiff has not alleged any injuries other than being dizzy right after being struck with the door and that his lip was bleeding on the "inside." Thus, although Plaintiff appears to dispute that absolutely no injury occurred, the allegations are not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used against the Plaintiff in this instance and should be dismissed.

**Grievance procedure**

Plaintiff appears to make claims regarding the grievance process at TRCI. These claims fail because inmates have no constitutionally protected right to a grievance procedure. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994).

**Retaliation**

Plaintiff asserts he was subjected to retaliation after the incident such as Sgt. Dillard and Sgt.

---

just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

Lankford coming to his cell a week after the incident to search for contraband resulting in Sgt. Dillard preparing a "bogus write up" about the incident. As to Plaintiff's conclusory allegations of retaliation, the claim fails. In regards to Plaintiff's claim of harassment/retaliation, the law clearly states that "[r]etaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir.1993). However, the Fourth Circuit Court of Appeals has also mandated that claims of retaliation should be regarded with skepticism. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994). An inmate must present more than conclusory accusations of retaliation, Id. at 74, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. See, e.g., Cochran 73 F.3d at 1318; Hughes v. Bledsoe, 48 F.3d 1376, 1387 n. 11 (4th Cir.1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. American Civil Liberties Union, 999 F.2d at 785. Plaintiff fails to meet these requirements, and the claim should be dismissed.

**Supervisory liability**

In his response to the motion for summary judgment, Plaintiff states that he named the supervisors of Sgt. Dillard for failing to exhibit authority and take corrective action against Sgt. Dillard. Because there is no doctrine of respondeat superior in § 1983 claims, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions

that violated constitutional norms, see Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). Plaintiff 's allegations based on supervisory liability fail and summary judgment should be granted to Defendants on this issue.

## **Qualified Immunity**

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, he is entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally
> are shielded from liability for civil damages insofar as their conduct
> does not violate clearly established statutory or constitutional rights
> of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for
> civil monetary damages if the officer's "conduct does not violate
> clearly established statutory or constitutional rights of which a
> reasonable person would have known." "In determining whether the
> specific right allegedly violated was 'clearly established,' the proper
> focus is not upon the right at its most general or abstract level, but at
> the level of its application to the specific conduct being challenged."
> Moreover, "the manner in which this [clearly established] right
> applies to the actions of the official must also be apparent." As such,
> if there is a "legitimate question" as to whether an official's conduct
> constitutes a constitutional violation, the official is entitled to
> qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1995). As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly

established constitutional or statutory rights. However, even if there was a violation, the Defendants

are entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be

granted.

**Pendent Jurisdiction**

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiff's complaint

somehow can be conceived to state an additional claim for relief under any state common law

theory, the undersigned concludes that such claim(s), if any, should be dismissed as well for want

of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).[3]

## IV. CONCLUSION

The Plaintiff has failed to show that the Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by the Defendants (document #57) for summary judgment be GRANTED IN ITS ENTIRETY and this action dismissed as to all Defendants.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.


Respectfully Submitted,


s/Thomas E. Rogers, III
February 11, 2015                          Thomas E. Rogers, III
Florence, south Carolina                   United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**

---

[3] Any claims by Plaintiff for injunctive relief should be denied. The issuance of an injunction as requested would undermine prison officials' ability to effectively manage prisons and maintain order and discipline. Cf. Taylor v. Freeman, 34 F.3d 266, 269-270 (4th Cir. 1994) (holding preliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances). The public interest weighs in favor of policies which encourage security in prisons. Nicholas v. Ozmint, No. 05-3472, 2006 WL 2711852, * 5 (D.S.C.Sept.20, 2006). The court must give deference to decisions by prison administrators. See Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir.1980). See also McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise").